

# THE ATTORNEY GENERAL

# OF TEXAS

**PRICE DANIEL**
ATTORNEY GENERAL

AUSTIN 11, TEXAS

October 9, 1951

Hon. H. A. Beckwith, Chairman
Board of Water Engineers
302 West Fifteenth Street
Austin, Texas

Opinion No. V-1307

Re: Purposes for which the appropriation to the Interstate Compact Commission may be used during the biennium ending August 31, 1953.

Dear Sir:

You have requested an opinion of this office relating to the purposes for which expenditures may be made from the appropriation to the Interstate Compact Commission in the general appropriation bill for the biennium ending August 31, 1953. H.B. 426, Acts 52nd Leg., R. S. 1951, ch. 499, p. 1228, at p. 1374.

The various statutes pertaining to the Interstate Compact Commission and related agencies will be summarized in chronological order so that your specific questions can be placed in the proper perspective.

The Legislature created the Interstate Compact Commission in 1949, and authorized the Governor to appoint an Interstate Compact Commissioner "to negotiate an agreement with each of the affected States respecting the use, control and disposition of the waters of the Canadian, Red and Sabine Rivers and their tributaries" and to "make the necessary investigations and procure the necessary data for the proper performance of his duties, and may, with the approval of the Governor, employ such clerical, legal, engineering and other assistance as may be necessary in the performance of such duties." H.B. 594, Acts 51st Leg., R.S. 1949, ch. 380, p. 716 (Art. 7466g, V.C.S.) The statute and emergency clause make clear that the Commissioner's duties were the negotiation of agreements and the investigating and procuring of data necessary to the negotiations concerning the above-named rivers. This statute also carried with it an appropriation for the remainder of the biennium ending August 31, 1951.

The Interstate Compact Commissioner successfully negotiated an agreement with New Mexico and Oklahoma relating to the Canadian River. The Legislature adopted the agreement, effective May 10, 1951, and charged the State Board of Water Engineers with the administration of the Compact. H.B. 63, Acts 52nd Leg., R.S. 1951, ch. 153, p. 260 (Art. 7466h, V.C.S.).

By an act effective June 15, 1951, the Legislature amended House Bill 63, supra, taking from the Board of Water Engineers the administration of the Compact in the following language:

"Section 1. That Section 2 of House Bill No. 63, Acts of the Fifty-second Legislature, 1951, be amended to read as follows:

"'Sec. 2. The Governor shall appoint a suitable person as Commissioner for the State of Texas to serve as a member of the 'Canadian River Commission' as contemplated by Section (a) of Article IX of the Canadian River Compact set forth in Section 1 of said House Bill No. 63. The Commissioner so appointed shall have the powers and discharge the duties prescribed by the terms of said Compact. He shall be allowed his actual expenses in the discharge of his duties under said Compact, and shall have authority to meet and confer with the other members of the Canadian River Commission at such points within or without the State of Texas as the Commission may see fit. The sum of One Thousand Dollars ($1,000) is hereby appropriated to the "Canadian River Revolving Fund" as the prorata obligation of the State of Texas to such fund as provided for in Section (b) of Article IX of said Compact. The sum herein appropriated shall be made available on September 1, 1951, out of any funds in the State Treasury not otherwise appropriated and shall be paid out of the Treasury on warrant of the Comptroller upon sworn account of the Commissioner.'" H.B. 805, Acts 52nd Leg., R.S. 1951, ch. 446, p. 803 (Art. 7466b, V.C.S.)

By an Act effective June 21, 1951, the Legislature authorized the Sabine River Authority, which had been established in 1949, /H.B. 467, Acts 51st Leg., R.S. 1949,

ch. 110, p. 193 (Art. 819f, V.C.S.)/ to negotiate a compact regarding the distribution and use of all waters of the Sabine River watershed as follows:

> "Section 1. The Sabine River Authority, when designated by the Governor of the State of Texas pursuant to Article X of the Constitution, shall have the power and authority to negotiate with the duly authorized representatives of the State of Louisiana and the duly authorized representatives of the Federal Government for a compact regarding the distribution and use of all waters of the Sabine River Watershed, and shall represent the State of Texas through a majority of its Board of Directors, and any and all negotiations necessary to secure such a compact between the State of Texas and the State of Louisiana.
>
> "Sec. 2. Any agreement which may be entered into between the Sabine River Authority on behalf of the State of Texas and the Compact Commission of other affected States and the representative of the government of the United States respecting the waters of the Sabine River shall have no binding effect upon the State of Texas or its legal representation until the same shall have been ratified by the Legislature of this State and approved by the Governor.
>
> "Sec. 3. There is hereby appropriated to the Sabine River Authority the sum of Four Thousand, Six Hundred and Seven Dollars ($4,607) for the purpose of carrying out the provisions of this Act." H.B. 413, Acts 52nd Leg., 1951, ch. 482, p. 857.

On September 4, 1951, the Governor, pursuant to Section 1, supra, designated the Sabine River Authority as his representative in negotiating a Sabine River compact.

The general appropriation bill for the biennium ending August 31, 1953, has the following appropriation:

"INTERSTATE COMPACT COMMISSION

Subject to the provisions appearing at the end of this Article, there is hereby appropriated out of the General Revenue Fund to the Interstate Compact Commission for each of the fiscal years of the biennium ending August 31, 1953, the sum of Ten Thousand Dollars ($10,000) for the payment of salaries and other necessary expenses for said Commission. Said appropriation shall be expended under the direction and supervision of the State Board of Water Engineers. Properties and facilities owned by the Interstate Compact Commission shall be made available to the State Board of Water Engineers for the purposes of this Section." H.B. 426, Acts 52nd Leg., 1951, ch. 499, p. 1228 at p. 1374.

In the light of the above statutes and appropriations, you have asked the following questions with regard to the $10,000 appropriation in the general appropriation bill for the Interstate Compact Commission:

(1) Is the Canadian River Commissioner to be paid out of the $10,000 appropriation?

(2) Must the $10,000 be apportioned equally among the Canadian, Red, and Sabine Rivers, or may it be apportioned as the Board of Water Engineers deems necessary?

(3) May any of the $10,000 be allocated for expenses of investigating and procuring data for, and in negotiating, a Sabine River Compact?

(4) May any of the $10,000 be expended on the negotiation of a Red River Compact?

The answers to all of the above questions lie in a determination of the authority remaining in the Interstate Compact Commissioner in the light of the general statutes set out which were passed subsequent to the statute creating the Interstate Compact Commissioner. The $10,000 appropriation is made for the Interstate Compact Commission, and it is elementary that the money may be spent only for activities which that office is authorized to carry on during the present biennium.

It is clear that all payments and allowances to the Canadian River Commissioner must be paid from the appropriation made in House Bill 805, supra. The emergency clause of that Act indicates that one of its primary purposes was to provide funds "to pay the actual expenses of the Commissioner in the performance of the duties of his office." The authority of the Interstate Compact Commission was limited to the necessary investigating and procuring of data leading up to, and the negotiation of, compacts for the Red, Sabine, and Canadian Rivers. The negotiations relating to the Canadian River have been completed, and the compact is now in effect. Therefore, under the terms of the statute setting up the Interstate Compact Commission, the authority it had as to the Canadian River is at an end.

The general statute authorizing the Sabine River Authority to negotiate a compact relating to that river is in partial conflict with the earlier statute which set up the Interstate Compact Commission and invested it with authority to negotiate a compact for the Sabine River. The latter statute gives to the Board of Directors of the Sabine River Authority the powers to carry on "any and all negotiations necessary to secure such a compact between the State of Texas and the State of Louisiana." (Emphasis added.) However, the duty and authority "to make the necessary investigations and procure the necessary data" for the negotiation of a Sabine River Compact was not removed from the Interstate Compact Commissioner or repealed by the latter act. It appears that the Legislature intended that this type of work be continued out of funds appropriated for the Interstate Compact Commission in order to assist the Sabine River Authority in its negotiations.

In view of the above, the appropriation to the Interstate Compact Commission may be expended for the salaries and expenses of the Commission in investigating and procuring data for, and the negotiating of, a Red River Compact, and for investigating and procuring data relating to the negotiation of a Sabine River Compact. There is no requirement as to division of the appropriated funds between the rivers mentioned, this being a matter necessarily controlled by the needs in each instance.

## SUMMARY

The Canadian River Compact Commissioner should be paid his expenses and allowances from the appropriation contained in H.B. 805, Acts 52nd Leg.,1951,

ch. 446, p. 803 (Art. 7466b, V.C.S.) rather than from the appropriation for the Interstate Compact Commission contained in the general appropriation bill, H.B. 426, Acts 52nd Leg., 1951.

The latter appropriation may be expended for investigating and procuring data for, and the negotiation of, a Red River Compact, and in investigating and procuring data for the use of the Sabine River Authority in negotiating a Sabine River Compact.

APPROVED:

Jesse P. Luton, Jr.
Reviewing Assistant

Everett Hutchinson
Executive Assistant

Charles D. Mathews
First Assistant

EWT:et

Yours very truly,

PRICE DANIEL
Attorney General

By E. Wayne Thode
E. Wayne Thode
Assistant